IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TOPRX, INC., a Tennessee corporation, ) ) ) | |
| Plaintiff, ) ) | Case No. 08-2588 |
| v. ) ) | |
| CEDARBURG PHARMACEUTICALS, INC., ) a Delaware corporation, and ) CEDARBURG GENERIC, LLC, a ) Wisconsin limited liability ) company, ) ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

On August 8, 2008, Plaintiff TopRx, Inc. filed this action against Defendants Cedarburg Pharmaceuticals, Inc. and Cedarburg Generic, LLC (collectively, "Defendants") in the Chancery Court of Shelby County, Tennessee, alleging breach of a contract between the parties. On September 12, 2008, Defendants removed the case to this Court. On October 20, 2008, Defendants filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Plaintiff responded on October 31, 2008, and Defendants replied on November 10, 2008. For the following reasons, Defendants' motion to dismiss is GRANTED.

**I.     Background**

On May 15, 2007, Cedarburg Pharmaceuticals executed a promissory note in favor of Plaintiff for $622,500 with an interest rate of eight percent (8%) per annum (the "Note"). (Compl. ¶ 6.)  The Note required Cedarburg Pharmaceuticals to make quarterly payments to Plaintiff equal to (1) any and all accrued interest on the principal sum and (2) twenty percent (20%) of the gross sales of Cedarburg Generic during the immediately preceding calendar quarter.  (Id. ¶ 7.)  The Note also provided that "[a]ll accrued interest, principal and any other sums due on this Note shall be due and payable on the third (3rd) anniversary of the date of this Note."  (Id.)  The Note provides that, in the event of default, "the interest rate of the Note shall increase to the maximum rate allowed by law and the holder of this Note shall have the option to pursue all legal and equitable remedies available under Wisconsin law." (Id. ¶ 8.)  The Note also provides for attorneys' fees and expenses should the Note be placed in the hands of an attorney for collection.  (Id.)  Also on May 15, 2007, the parties executed a Security Agreement to secure the Note, with Cedarburg Pharmaceuticals and Cedarburg Generic as guarantors and Plaintiff as the secured party.[1]  (Id. ¶ 9.)

---

[1] Although the complaint alleges that both Defendants are guarantors under the Security Agreement, it appears that Cedarburg

2

Cedarburg Pharmaceuticals made two payments on the Note on October 15, 2007, and January 15, 2008. (Id. ¶ 10.) Cedarburg Pharmaceuticals failed to make the payments that came due under the Note on April 15, 2008, and July 15, 2008. (Id. ¶ 11.) Failure to make those payments constitutes a default under the terms of the Note. (Id.) Plaintiff has demanded that Cedarburg Pharmaceuticals cure its default by paying all sums due under the Note, but Cedarburg Pharmaceuticals has failed and refused to do so. (Id. ¶ 12.) Cedarburg Pharmaceuticals' default under the Note places Defendants in breach of the terms of the Security Agreement. (Id. ¶ 13.) Plaintiff now sues for breach of contract to recover the total amount owed under the Note, including principal, accrued interest, late charges, costs of collection, and attorneys' fees for this action. (Id. ¶¶ 15-18.) Defendants argue that this Court lacks personal jurisdiction over them.

## II.  Jurisdiction

Plaintiff alleges that the Court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and Plaintiff seeks more than $75,000 in damages.

Plaintiff is a corporation. A corporation is a citizen of the state by which it is incorporated and the state where it has

---

Pharmaceuticals is the debtor and Cedarburg Generic is a guarantor. (Compl. Ex. B.)

its principal place of business.  28 U.S.C. § 1332(c)(1). Plaintiff is a Tennessee corporation with its principal place of business in Bartlett, Tennessee.  (Compl. ¶ 1.)  Therefore, Plaintiff is a citizen of Tennessee for diversity purposes.

Defendant Cedarburg Pharmaceuticals is a Delaware corporation with its principal place of business in Grafton, Wisconsin.  (Id. ¶ 2.)  Therefore, it is a citizen of Delaware and Wisconsin for diversity purposes.

Defendant Cedarburg Generic is a limited liability company organized under Wisconsin law with its principal place of business in Grafton, Wisconsin.  (Id. ¶ 3.)  For diversity purposes, a limited liability company is a citizen of every state in which a member is a citizen.  Homfeld II, LLC v. Comair Holdings, Inc., 53 F. App'x. 731, 732 (6th Cir. 2002).  Although Plaintiff does not list the citizenship of each member of Cedarburg Generic, none of Cedarburg Generic's members is a citizen of Tennessee.  (Notice of Removal ¶ 4; Compl. ¶ 3.) Therefore, complete diversity exists, and jurisdiction is appropriate under 28 U.S.C. § 1332.

**III. Standard of Review**

Motions to dismiss for lack of personal jurisdiction are considered under a "procedural scheme" that is "well-settled." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff at all times bears the burden of establishing that

4

the court has personal jurisdiction over the defendant.  Id. "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." Id. (citation omitted).  When a court bases its decision on supporting and opposing affidavits without an evidentiary hearing, "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." Id. "[T]he court must . . . view affidavits, pleadings, and documentary evidence in the light most favorable to the plaintiff." Kerry Steel v. Paragon Indus., Inc., 106 F.3d 147, 153 (6th Cir. 1997).  This does not require the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." Id.  The court, however, "does not weigh the controverting assertions of the party seeking dismissal." Theunissen, 935 F.2d at 1459.

**IV. Analysis**

When a federal court has jurisdiction over a case based on diversity of citizenship under 28 U.S.C. § 1332, it must apply the forum state's rules for exercising personal jurisdiction to determine whether it has such jurisdiction over an out-of-state defendant. Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd., 138 F.3d 624, 627 (6th Cir. 1998).  The Tennessee long-arm

statute, Tenn. Code Ann. § 20-2-225(2), confers personal jurisdiction over nonresident defendants to the maximum extent permitted under the Due Process Clause of the United States Constitution.  Payne v. Motorists' Mut. Ins. Cos., 4 F.3d 452, 455 (6th Cir. 1993); Shelby Mut. Ins. Co. v. Moore, 645 S.W.2d 242, 244-45 (Tenn. 1981).  The requirements of the Tennessee long-arm statute track the Due Process Clause of the Constitution, and this Court's inquiry focuses on whether the exercise of personal jurisdiction over Defendant meets constitutional due process requirements.  See, e.g., Aristech, 138 F.3d at 627.

Personal jurisdiction over a defendant stems from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The critical question a minimum-contacts analysis seeks to answer is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In analyzing the due-process limits of personal jurisdiction, courts distinguish "general" jurisdiction and "specific" jurisdiction.  See e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 n.15 (1985).  In a case of

general jurisdiction, a defendant's contacts with the forum state are of such a "continuous and systematic" nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952). In a specific jurisdiction case, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

All of the contacts with Tennessee that Plaintiff alleges to support personal jurisdiction relate to Plaintiff's cause of action in this case. (Compl. at 1-3; Ray Aff. ¶¶ 4-6; Pl.'s Resp. 1-2.) Plaintiff has offered no evidence that Defendants maintain "continuous and systematic" contacts with Tennessee beyond the allegations that give rise to Plaintiff's claim. Therefore, there is no basis for general personal jurisdiction, and the Court must consider whether Plaintiff has established specific personal jurisdiction over Defendants.

Specific jurisdiction exists when three criteria are satisfied: 1) the defendant purposely avails himself of the privilege of acting in the forum state or intentionally causes a consequence there; 2) the plaintiff's cause of action arises from the defendant's actions in the forum state; and 3) the

7

exercise of personal jurisdiction is reasonable in light of the defendant's acts or the consequences of his acts in the forum state. Southern Mach. Co., Inc. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).[2] The significance of purposeful availment is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," World-Wide Volkswagen, 444 U.S. at 297, and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." Burger King, 471 U.S. at 475; see also Kerry Steel, 106 F.3d at 150.

---

[2] In Moore, the Tennessee Supreme Court suggested that the three-part test in Mohasco was "too narrow and restrictive," and proposed a new five-part test for determining the outer limits of personal jurisdiction under the Tennessee long-arm statute. 645 S.W.2d at 246. Although the court in Moore did not distinguish between specific and general personal jurisdiction, Tennessee Courts have applied the five-part Moore test in the context of specific personal jurisdiction. See, e.g., United Agricultural Servs., Inc. v. Scherer, 17 S.W.3d 252, 256-59 (Tenn. Ct. App. 1999). The Sixth Circuit has not adopted this new test, however, and continues to apply the three-prong Mohasco test to determine whether specific personal jurisdiction exists. See, e.g., City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 665 (6th Cir. 2005); Aristech, 138 F.3d at 628; Payne, 4 F.3d at 456; Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089-90 (6th Cir. 1989). The Sixth Circuit has reasoned that "when a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court 'need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process.'" Aristech, 138 F.3d at 627 (quoting Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir. 1996)). In such cases, the Sixth Circuit maintains the three-part Mohasco test to determine the limits of the Due Process Clause. See id.

8

In analyzing the first prong of the Mohasco test, purposeful availment, the Sixth Circuit has noted that "[t]here is a difference between what World-Wide Volkswagen calls a mere 'collateral relation to the forum State,' and the kind of substantial relationship with the forum state that invokes, by design, 'the benefits and protections of its laws.'" Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000) (quoting World-Wide Volkswagen, 444 U.S. at 299).  "The Supreme Court has emphasized, with respect to interstate contractual obligations, that 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequence of their activities.'" Id. (quoting Burger King, 471 U.S. at 473).  Nevertheless, "the mere existence of a contract between [the defendant and a resident of the forum state] is insufficient to confer personal jurisdiction" over a nonresident defendant.  Id.  In examining interstate contractual obligations, the most important factors to consider are the "prior negotiations and contemplated future consequences" of the agreement, "along with the terms of the contract and [the] parties' actual course of dealing."  Id. (quoting Burger King, 471 U.S. at 479.)  "The parties' actions 'in the negotiation and performance of the . . . agreement' are more important factors to consider than the duration of the

9

contract." Id. (quoting Nationwide Mut. Ins., 91 F.3d at 796). "The quality rather than the quantity of the contacts is the proper subject of review." Id.; see also LAK, Inc. v. Deer Creek Enters., 885 F.2d 1293, 1301 (6th Cir. 1989) ("The quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre- or post-agreement communications.") (quoting Stuart v. Spaderman, 772 F.2d 1185, 1194 (5th Cir. 1985)).

Plaintiff's claim arises from an alleged breach of the Note and accompanying Security Agreement, an interstate contractual agreement executed by the parties. Therefore, the Court must consider the negotiations and terms of the contract, and Defendants' contacts with Tennessee as they relate to the parties' course of dealing and the consequences of the agreement.

In 2005, before execution of the Note, the President of TopRx met with officers of Cedarburg Pharmaceuticals and Cedarburg Generic in Memphis, Tennessee. (Ray Aff. ¶ 4.) The purpose of the meeting was to discuss TopRx's potential investment in Cedarburg Generic and the potential development of TopRx Compounding Supplies, LLC, a joint venture between TopRx and Cedarburg Pharmaceuticals.[3] (Id.) Two years later, in 2007,

---

[3] The parties offer no evidence that TopRx Compounding Supplies, LLC ever came into being.

10

Cedarburg Pharmaceuticals executed the Note and Security Agreement that are the subject of this lawsuit.  (Id. ¶ 5.)  These documents were executed as part of the sale of TopRx's interest in Cedarburg Generic to Cedarburg Pharmaceuticals.  (Id.)  The Note was executed in Wisconsin,[4] and, by its own terms, is governed by Wisconsin law.[5]  (Holzrichter Aff. ¶ 8.)  The Note required Cedarburg Pharmaceuticals to send quarterly payments to Plaintiff in Tennessee.  (Compl. ¶ 7.)  Cedarburg Pharmaceuticals sent two payments to Plaintiff in Tennessee.  (Id. ¶ 10.)  Cedarburg Pharmaceuticals has shipped products directly to Plaintiff in Shelby County, Tennessee.[6]  (Ray Aff. ¶ 6.)

Viewing the pleadings, affidavits, and evidence in the light most favorable to Plaintiff, Plaintiff has failed to establish that Defendants purposefully availed themselves of the privilege of acting in Tennessee.  Plaintiff's allegation of purposeful availment is based on the following facts: the president of TopRx once met with officers from Cedarburg Pharmaceuticals and Cedarburg Generic in Memphis, Tennessee; Cedarburg Pharmaceuticals "shipped products" to Plaintiff in

---

[4] The parties' submissions do not specify where the Security Agreement was executed.
[5] Although the Note does contain a choice of law clause, the parties agree that it does not contain a jurisdiction or forum selection cause.
[6] Defendants did not ship any goods to Tennessee after October 2007, but they did make shipments in the preceding two years.  (Holzrichter Aff. ¶¶ 11-12.)

Tennessee; Cedarburg Pharmaceuticals executed a promissory note in Wisconsin in favor of Plaintiff, a Tennessee corporation; and the Note required Cedarburg Pharmaceuticals to remit payments to Plaintiff in Tennessee, which it did twice. (Pl.'s Resp. 2.) Under the law of this Circuit, these facts do not amount to purposeful availment and fail to satisfy the first criterion of the Mohasco test for specific jurisdiction.

Although Defendants entered into an inter-state contractual relationship with Plaintiff, the quality of Defendants' contacts does not suggest that they availed themselves of the privileges and benefits of Tennessee law. Defendants came to Tennessee only once to discuss or negotiate the Note and the Security Agreement. Although Plaintiff alleges that Defendants "shipped products" to it in Tennessee, that allegation is unspecific, and Plaintiff does not allege that those products were used in commerce in Tennessee or otherwise explain how these contacts were significant for purposes of establishing personal jurisdiction. Defendants' only other contact with Tennessee was Cedarburg Pharmaceuticals' remission of two payments on the Note. Although the Note may create a "continuing obligation" between the parties, cases in which such obligations have been deemed sufficient for personal jurisdiction require much more significant contacts than the case at bar. See, e.g., Mohasco, 401 F.2d at 382-83 (negotiating a license to manufacture, lease,

12

and sell a product in the forum state); Burger King, 471 U.S. at 478-79 (entering into a twenty-year franchise agreement to operate a restaurant in the forum state); Third Nat'l Bank, 882 F.2d at 1090 (owned a corporation that conducted business in the forum state and held frequent meetings of corporate officers in the forum state).  The Sixth Circuit has repeatedly held contacts similar to those alleged by Plaintiff to be too "attenuated" for a finding of purposeful availment.  See, e.g., LAK, Inc., 885 F.2d at 1301 (a personal visit to the forum state by representatives of the defendant, combined with letters, telephone calls, and multiple draft contracts being sent to the plaintiff in the forum state, were insufficient); Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 982 (6th Cir. 1992) (no purposeful availment where the defendant paid for and mailed airline tickets to the plaintiff in the forum state, mailed materials directly to the plaintiff in the forum state, conducted extensive contract negotiations in the forum state, and mailed an employment contract offer letter to the plaintiff in the forum state); Kerry Steel, 106 F.3d at 151 (contracting with a corporation in the forum state and sending letters and faxes and making phone calls to the forum state are not sufficient contacts for purposeful availment).

    Plaintiff underscores the fact that it suffered its injury in Tennessee, and that the payments were due in Tennessee, but

13

these facts are insufficient to establish specific personal jurisdiction. The Sixth Circuit has stated that "the locus of such a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in [the forum state].'" LAK, Inc., 885 F.2d at 1303 (quoting Hanson v. Denckla, 357 U.S. 235, 252 (1958)). Plaintiff has alleged no facts to suggest that the obligation to pay on the Note was related to a privilege that Defendants exercised in Tennessee. Both Cedarburg Pharmaceuticals and Cedarburg Generic conduct all of their business in Wisconsin. (Holzrichter Aff. ¶ 4.) Neither entity produces goods or services in Tennessee. (Id. ¶ 5.) The Note was executed in Wisconsin and is governed by Wisconsin law. (Id. ¶ 8.) Therefore, although Plaintiff has alleged that the Note was executed in conjunction with the sale of an interest in Cedarburg Generic, that sale appears wholly unrelated to Tennessee except for the fact that TopRx is a Tennessee corporation. Both the Supreme Court and the Sixth Circuit have held that that fact is insufficient to establish purposeful availment.[7] Burger King, 471 U.S. at 478; Calphalon, 228 F.3d at 722. The purposeful availment prong of the Mohasco

---

[7] The Sixth Circuit has also cited favorably another court's holding that "[t]he use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process." Kerry Steel, 106 F.3d at 151 (quoting Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982)) (emphasis added).

14

test cannot be satisfied where, as here, "[t]he record is bare of any proof that the defendants availed themselves of any of the benefits and protections of [Tennessee] law." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1177 (6th Cir. 1992).

The Sixth Circuit has described the first criterion for specific jurisdiction, purposeful availment, as "the sine qua non for in personam jurisdiction." Mohasco, 401 F.2d at 381-82. "[E]ach [Mohasco] criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." LAK, Inc., 885 F.2d at 1303. Therefore, because Plaintiff has failed to make a prima facie showing of purposeful availment sufficient to satisfy the first criterion for specific jurisdiction, the Court cannot exercise personal jurisdiction over Defendants.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.


So ordered this 10th day of June, 2009.


                                              s/ Samuel H. Mays, Jr.
                                              SAMUEL H. MAYS, JR.
                                              UNITED STATES DISTRICT JUDGE